IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SUSAN HECKAMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 3:09-CV-28 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits to Plaintiff, Susan Heckaman. For the reasons set forth below, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

BACKGROUND

On August 5, 2004, Plaintiff, Susan Heckaman ("Heckaman"), applied for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 et seq. Heckaman alleged that her disability began on December 5, 2003, the date she last engaged in substantial gainful employment. The Social Security Administration denied her initial application and also denied her

claim on reconsideration. On June 12, 2007, Plaintiff appeared with counsel at an administrative hearing before Administrative Law Judge ("ALJ") Frederick McGrath ("McGrath"). Testimony was provided by Plaintiff, Steve Heckaman (Plaintiff's spouse), and Donna Whitcomb (a vocational expert). On September 10, 2007, ALJ McGrath denied Plaintiff's DIB claim, finding that, during the period from December 5, 2003, through September 10, 2007 (the date of the ALJ's decision), Heckaman had not been under a "disability" as defined in the Social Security Act.

Plaintiff requested that the Appeals Council review the ALJ's decision. That request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a)(2005). Plaintiff has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g).

DISCUSSION

Facts

Heckaman was born on September 25, 1961, and was 45 years old when the ALJ rendered his decision. (Tr. 75). Heckaman alleges the following impairments: fibromyalgia, chronic myofascial pain, fatigue, Graves' disease, depression, carpal tunnel syndrome, chronic pleurisy, degenerative disc disease, and microvascular disease, and migraine headaches. (Tr. 83-84). Heckaman has a ninth grade education without

a GED. (Tr. 92). Her past relevant work includes work as a waitress and as a core assembler, although the ALJ's opinion mentions only her work as a waitress. (Tr. 26-27, 85, 94-96).

The medical evidence can be summarized as follows:

Plaintiff reports she treated with Dr. Fen-Lei Chang, a neurologist, beginning in 2003. (Tr. 86). Dr. Chang performed an EMG nerve conduction study of the left arm. It showed no evidence of any significant cervical radiculopathy, brachial plexopathy, neuropathy, or myopathy. An EMG nerve conduction study of the right lower extremity in December 2003 did not show any significant lumbosacral radiculopathy, plexopathy, isolated neuropathy, peripheral neuropathy or myopathy. Dr. Chang opined that, from a neurological standpoint, Heckaman could return to work. (Tr. 25, 319-31). Although not mentioned in the ALJ's opinion, after indicating that there was no neurological reason to preclude work, Dr. Chang noted that Heckaman "told me that her family physician is thinking about the possibility of lupus and certainly we will concur a rheumatology consultation if that is a potential direction of further differential diagnosis." (Tr. 331). Heckaman continued treating with Dr. Chang periodically through at least 2006, at which time Dr. Chang examined her and found she had a normal gait with intact postural reflex; muscle strength in her arms and legs rated at 5 out of 5; and muscle tone of the upper and lower extremities was normal. He found no rigidity or spasticity, and the claimant appeared to have trouble with balance, although it

was inconsistent. (Tr. 865-67).

Heckaman began treating with Dr. Kevin A. Rahn in early 2004. (Tr. 87). Dr. Rahn's notes from January 29, 2004, indicate that an MRI of the cervical spine showed degenerative fusion at C2-C3, and some foraminal stenosis and bulging at C6-C7. (Tr. 564-623). Rahn reported that Heckaman had decreased sensation in the ulnar three digits of both hands, shoulder and neck pain, and increasing pain with shoulder range of motion. On May 5, 2004, Dr. Rahn imposed a lifting restriction of less than ten pounds. At the time this restriction was given, Heckaman was five weeks status post C4, C5 and C6 facet joint injections. She reported two weeks of pain relief following the injections. Dr. Rahn recommended a facet ablation, to be performed by another physician. (Tr. 544).

Dr. Kenneth Bundza, Ph.D. performed a consultative mental status examination on October 4, 2004. Dr. Bundza diagnosed Heckaman with major depressive disorder and pain disorder. He rated her Global Assessment of Functioning ("GAF") at 50, which represents serious impairment in social, occupational, or school functioning. (Tr. 603-06).

On November 2, 2004, Heckaman received a consultative physical examination by Venkata Kancherla, M.D. Dr. Kancherla reported a normal physical examination. He further reported that Heckaman drove her car independently and was able to do her daily household chores, although some days she felt bad and frustrated with no energy. (Tr.

621-23).

Heckaman's primary treating physician is Anuradha Kollipara, M.D. Heckaman reports that she has treated with Kollipara since November 2000. (Tr. 87). On February 2, 2004, Dr. Kollipara diagnosed fibromyalgia, noting Heckaman was unable to lift heavy objects and had pain with housework. (Tr. 636). Dr. Kollipara offered the following written comments in a letter dated January 28, 2005, in support of Heckaman's disability application:

> Susan Heckaman was diagnosed with fibromyalgia, cervicalgia with dorsal spine pain, and costrochondritis. She has tried various treatments including medications, physical therapy, and nerve blocks without any significant relief of pain. She continued to suffer from severe neck, shoulder, and chest pain from the above medical conditions and is currently disabled. She also suffers from depression. She has seen several specialists, including neurologists, orthopedic surgeons, and pain management. Due to her medical problems she cannot work for more than two hours per day or lift more than five pounds.

(Tr. 626).

According to Heckaman's husband, Heckaman is tired, and she often uses a heat pad or soaks in the tub for relief. He further reports that Heckaman cries easily, and does not go out to see family and friends as often as she used to. Mr. Heckaman reports that Heckaman does not go grocery shopping by herself, and that he helps around the house. (Tr. 716-717).

Heckaman reported that on a typical day she gets up about 6:00 a.m., she drinks coffee, does the dishes from the night before, and

lies down. (Tr. 711-12). Sometimes she lies down for an hour, sometimes longer. (Tr. 712). She reports that she gets tired very easily. (Tr. 712). She further reports that the doctor (she does not indicate which one) told her not to lift more than two pounds. (Tr. 712). She indicated she can not lift a gallon of milk – that she'll drop it. (Tr. 712). She estimates she could lift about five pounds. (Tr. 712-13). She believes she can sit comfortably, before shifting weight, for 15 or 20 minutes. (Tr. 713). She believes she can stand for a similar amount of time. (Tr. 713). She believes she can walk less than a block. (Tr. 713). She reports crying frequently about "[j]ust not being able to have life, that I, not being able to do the things that I've always done, not being able to work." (Tr. 714). She further estimates that during the hours of 8:00 a.m. to 4:00 p.m. she lies down for at least 5 hours. (Tr. 714).

The vocational expert ("VE"), Donna Whitcomb, testified that a hypothetical individual of the Plaintiff's age, education and work experience, capable of engaging in the full range of light work could work as a waitress, a job Heckaman previously held. The VE also testified that a variety of other unskilled jobs at the light exertional level would be available for such a hypothetical individual. (Tr. 717-720).

Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence exists, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or re-weighing evidence. *Jens v. Barnhart*, 347, F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law de novo and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for DIB or SSI benefits under the Social Security Act, the claimant must establish that he is disabled. To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(1). To determine

whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

Step 1:   Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

Step 2:   Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months?  If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3.

Step 3:   Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1?  If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4.

Step 4:   Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner.

Step 5:   Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v); *see also Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

In this case the ALJ found that Heckaman suffers from the following severe impairments: a history of Grave's disease, status-post carpal tunnel release of the left hand, osteopenia, fibromyalgia, and degenerative disc disease of the cervical spine.  (Tr. 22).  The ALJ specifically found that Heckaman's reported depression did not qualify as a severe impairment.  (Tr. 23).

The ALJ further found that Heckaman did not meet or medically equal one of the listed impairments.  (Tr. 23).  The ALJ then

determined that Heckaman has the residual functional capacity to perform the full range of light work[1]. (Tr. 23). Further, the ALJ found that Heckaman is capable of performing her past relevant work as a waitress. (Tr. 26). Thus, Heckaman's claim failed at step 4 of the evaluation process. (Tr. 23-24). Heckaman believes that the ALJ committed several errors requiring reversal, each of which will be addressed in turn.

Credibility Determination

Heckaman claims that the ALJ failed to properly evaluate the credibility of her testimony. Because the ALJ is best positioned to judge a claimant's truthfulness, this Court will overturn an ALJ's credibility determination only if it is patently wrong. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). However, when a claimant produces medical evidence of an underlying impairment, the ALJ may not ignore subjective complaints solely because they are unsupported by objective evidence. *Schmidt v. Barnhart*, 395 F.3d 737, 745-47 (7th Cir. 2005). Instead, the ALJ must make a credibility determination supported by record evidence and be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight given to the claimant's statements and the reasons for that weight. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003).

---

[1]Light work involves lifting no more than twenty (20) pounds at a time, with frequent lifting and carrying of objects weighting up to ten (10) pounds. 20 C.F.R. § 404.1567.

In evaluating the credibility of statements supporting a Social Security Application, the Seventh Circuit Court of Appeals has noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). This ruling requires ALJs to articulate "specific reasons" behind credibility evaluations; the ALJ cannot merely state that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p. Furthermore, the ALJ must consider specific factors when assessing the credibility of an individual's statement including:

1. The individual's daily activities;
2. The location, duration, frequency and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effect of any medications the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *see also Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003).

The ALJ's opinion discusses the process used for evaluating symptoms, and notes the following: "Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. 404.1529(c) describes the kinds of evidence, including the factors

below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements..." (Tr. 24). The ALJ then lists the factors to be considered.

Next, the ALJ summarizes Heckaman's and her spouse's testimony regarding Heckaman's symptoms, and states that:

> [a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 25). The ALJ then summarizes the medical evidence, concludes that Heckaman retains the capacity to perform a full range of light work, and notes the following:

> The weight of the objective evidence in the record indicates normal physical findings and little etiology to support the claimant [sic] subjective limitations. Additionally, there are no objective findings of the claimant having 11 out of 18 tender points that is specified by the American College of Rheumatology as criteria for a diagnosis of fibromyalgia.

(Tr. 26).

The ALJ did not specifically state what portion of Heckaman's testimony was not credited, although it would appear that the ALJ rejected almost all of Heckaman's testimony regarding pain and fatigue. When considering a DIB claim based on fibromyalgia, a diagnosis which is defined by a lack of objective findings, and which nonetheless is accepted as a potentially disabling impairment, it is

-11-

inappropriate to rely on the lack of objective medical findings to support a finding that the claimant is not credible. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(criticizing an ALJ for, among other things, depreciating the gravity of a claimant's fibromyalgia because of the lack of any evidence of objectively discernable symptoms); *Estok v. Apfel*, 152 F.3d 636, (noting that the parties did not question "that fibromyalgia is very difficult to diagnose, that no objective medical tests reveal its presence, and that it can be completely disabling."). If objective medical evidence were required, than no claimant with fibromyalgia would be found disabled.

Here, the ALJ accepts that Heckaman's fibromyalgia is a severe impairment, and thus, presumably, that the diagnosis of fibromyalgia is valid. But then, the ALJ back steps, seemingly questioning whether the diagnosis of fibromyalgia is warranted. If the ALJ questioned the legitimacy of the diagnosis (which is fairly common with fibromyalgia), a couple different remedies were available to him. The ALJ could have sought additional information from either the claimant's treating physician or through a consultive examination. Alternatively, the ALJ could have posed questions regarding the legitimacy of this diagnosis to a medical expert at the hearing. He did neither of those.

The ALJ's two references to Heckaman's testimony being less than credible sandwich his discussion of the medical evidence. Other than its placement, the ALJ's opinion does not make it clear how his review

-12-

of the medical evidence which follows his statement that Heckaman is not entirely credible fits together with his credibility determination. In fact, it appears that his review of the medical evidence is part of his determination of Heckaman's residual functional capacity rather than part of his credibility analysis. In essence, if this evidence is indeed connected to his credibility determination (as the Commissioner now argues), then in addition to it being an inappropriate criteria for discrediting Heckaman's testimony, he has failed to "connect the dots" in a way that makes meaningful appellate review possible.

The ALJ's explanation for not treating Heckaman's testimony as fully credible is inadequate. The facts of record *may* leave room for an ALJ to reach the conclusion that ALJ McGrath reached. The problem is not the conclusion, but the failure to explicitly set forth the analysis in the decision. Because the ALJ's decision, adopted by the Commissioner, committed an error of law, reversal is required irrespective of the volume of evidence that *may* support the finding of fact.

The Weight Given to Heckaman's Treating Physician's Opinion

Heckaman claims that the ALJ erred in evaluating the opinion of Dr. Kollipara. Social Security Ruling ("SSR") 96-2p provides that a treating physician's medical opinion must be given controlling weight if it is "well supported and not inconsistent with other substantial

-13-

evidence in the case record." Furthermore, SSR 96-2p requires that the ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. Additionally, 20 C.F.R. §§ 404.1527(d)(2) and 416.927 (d)(2) establish six criteria that should be evaluated when determining the weight that should be given to a treating physician's opinion. See *Butera v. Apfel*, 173 F.3d 1049, 1056 (7th Cir. 1999). The six criteria are:

1) the nature and extent of the treatment relationship;
2) the degree to which the medical signs and laboratory findings support the opinion;
3) the degree to which the opinion takes into account all of the pertinent evidence in the record;
4) the persuasiveness of the opinion rendered;
5) the consistency of the opinion with the record as a whole;
6) the specialization of the physician.

20 C.F.R. §§ 404.1527(d)(2) and 416.927(a)-(d).

Dr. Kollipara offered a letter in support of Heckaman's DIB application stating that Heckaman can not work more than two hours per day, can not lift more than 5 pounds, and is currently disabled. The ALJ acknowledged that Dr. Kollipara was a treating physician, but gave Dr. Kollipara's opinion little weight because "the objective medical evidence does not support an inability to work for more than two hours, and the determination or decision of disability is an administrative finding that is expressly reserved to the Commissioner 20 C.F.R.

404.1527)." (Tr. 25).

The ALJ was correct to disregard the portion of Dr. Kollipara's opinion that offered a conclusion on whether Heckaman is disabled; that is, after all, a decision reserved to the commissioner. *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010)("the ALJ is not required to give controlling weight to the ultimate conclusion fo disability - a finding specifically reserved for the Commissioner"); 20 C.F.R. § 404.1527(d)(2).

Furthermore, Dr. Kollipara failed to explain her opinion that Heckaman can work only two hours per day. A more useful opinion from a physician would have indicated how long Heckaman can engage in various specific activities such as walking, standing and sitting, rather than a broad assertion that she cannot work more than two hours per day. But, Kollipara offered another opinion as well: a lifting restriction of 5 pounds. Clearly the ALJ rejected this portion of Kollipara's opinion too, finding that she is capable of light work, and therefore capable of lifting up to 20 pounds. As this is the only treating physician who rendered an opinion regarding any specific restrictions that can be understood as ongoing in nature, it might have been prudent to seek further clarification from Dr. Kollipara on the reasons for her opinion that Heckaman could not work more than two hours per day. *See Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004)("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.").

In addition, the fact that Dr. Kollipara failed to understand that the ultimate decision as to disability rests with the Commissioner is not a valid basis for discrediting the lifting restrictions she has imposed. A lack of objective evidence where a diagnosis of fibromyalgia has been accepted as valid also does not warrant rejecting Dr. Kollipara's lifting restriction. There may be valid reasons for discrediting Dr. Kollipara's medical opinion. Additionally, even if Dr. Kollipara's 5 pound lifting restriction were credited, a finding of not disabled may be warranted. However, reversal is required because the reasons annunciated by the ALJ for discrediting Kollipara's opinion as to the lifting restriction are not adequately expressed in the opinion.

ALJ's Failure to Consider Heckaman's Diagnosis of Pleurisy

In her initial application for DIB Heckaman indicated that one of her impairments was pleurisy. The medical records submitted to the SSA prior to hearing support a finding that Heckaman suffered from pleurisy. (Tr. 592-595). The ALJ's decision, however, fails to address Heckaman's pleurisy at all.

An ALJ is required to evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not simply dismiss a line of evidence that might be contrary to the ruling. S.S.R. 96-8p; *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Zurawski v. Halter,* 245 F.3d 881, 888 (7th Cir. 2001); *see also*

*Maziarz v. Secretary of Health & Human* Services*,* 837 F.2d 240, 244 (6th Cir. 1987) (noting that an ALJ's failure to find a particular impairment severe at step two can be harmless error if the ALJ considers the functional limitations of that impairment at later steps of the evaluation). Perhaps ALJ McGrath determined that Heckaman's pleurisy resulted in no functional limitations. Unfortunately, if that determination was made, it is not clear from his opinion. Accordingly, on remand the ALJ is directed to articulate his reasoning with regards to pleurisy at some minimal level. *See Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

ALJ's Failure to Develop the Record Regarding Heckaman's Depression

In addition to the above arguments, Heckaman suggests that the ALJ erred by failing to develop the record with regards to Heckaman's depression. Heckaman notes that an ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interest are considered, and that this duty extends to claimants represented by counsel. *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Unfortunately, Heckaman does little to develop this argument, and fails to suggest with any particularity what the ALJ should have done to further develop the record. The Commissioner fails to address the argument entirely. Although this argument was not well-developed by the parties, on remand the ALJ should carefully consider whether further development of the record with

-17-

regards to Heckaman's depression is warranted.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

**DATED: September 3, 2010**             /s/RUDY LOZANO, Judge
                                         **United States District Court**